**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **HEATHER BODELL,** | |
| **Plaintiff,** | |
| **v.** | |
| **BLOOMBERG INDUSTRY GROUP, INC.** | **CIVIL ACTION NO.: 1:26-cv-1190** |
| **Serve On:** **Corporation Service Company** **100 Shockoe Slip Fl 2** **Richmond, VA 23219** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## COMPLAINT

Plaintiff Heather Bodell, by and through undersigned counsel, files this Complaint against Defendants Bloomberg Industry Group, Inc. ("Bloomberg" or "Defendant") and alleges as follows:

## NATURE OF ACTION

This action arises from claims of discrimination based on age and retaliation for engaging in protected activity in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Virginia Human Rights Act, Va. Code § 2.2-3900, *et seq.*, as amended by the Virginia Values Act ("VHRA"). Specifically, Plaintiff suffered unlawful discrimination in her employment on the basis of her age and retaliation following her complaints regarding said discrimination.

1

**PARTIES**

1.      Plaintiff Heather Bodell is a citizen and resident of Vienna, Virginia. At all relevant times, Plaintiff worked for Defendant in Arlington, Virginia. Plaintiff is over the age of 40 and was over the age of 40 at all relevant times .

2.      Defendant Bloomberg is a corporation authorized to conduct business in the Commonwealth of Virginia with its principal place of business in Arlington, Virginia. At all times relevant to this Complaint, Defendant Bloomberg operated as a provider of legal, tax, regulatory and government analysis to professionals in those sectors.

**JURISDICTION AND VENUE**

3.      The acts complained of herein occurred principally in the Commonwealth of Virginia.

4.      This action is brought pursuant to the ADEA and the VHRA. This Court has jurisdiction over Plaintiff's ADEA claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). This Court has supplemental jurisdiction over Plaintiff's VHRA claims pursuant to 28 U.S.C. § 1367 because those claims are part of the same case and controversy as Plaintiff's federal claims.

5.      Venue is appropriate and proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred within this judicial district.

6.      The U.S. Equal Employment Opportunity Commission ("EEOC") issued Ms. Bodell a Notice of Right to Sue letter on February 11, 2026. This Complaint is being filed within 90 days of the receipt of the Notice of Right to Sue letter.

7.      All statutory prerequisites for bringing this action have been timely satisfied.

8.      This Action has been filed within the applicable statutory time periods.

**FACTUAL ALLEGATIONS**

9.      Plaintiff began her employment with Defendant's predecessor, the Bureau of National Affairs ("BNA"), in 1995. Over the years, she held numerous positions, including reporter, copy editor, and managing editor for various notification and reference services in the area of labor and employment law.

10.      Defendant Bloomberg acquired BNA in 2011, and Plaintiff continued her employment with Bloomberg.

11.      In 2019, Plaintiff became a Practice Lead on the Content Team for Bloomberg Law, one of Defendant's products. In that role, Plaintiff led a multi-year project to design, build, and launch a suite of labor and employment law reference guides that were fully integrated with Bloomberg Law research tools and related content.

12.      Among her accomplishments, Ms. Bodell proposed the creation of an In Focus page on Covid-19, which became Bloomberg Law's most successful and recognized product in the legal information industry.

13.      In August 2022, Ms. Bodell's manager at the time, Kate Klenner, informed Ms. Bodell that Bloomberg was going to undergo a reorganization and that she was going to be reassigned to the Analysis Team, which was led by Kristyn Hyland. Shortly thereafter, the reorganization of Bloomberg Law's Content and Analysis Teams was formally announced by Alex Butler, Vice President of Analysis & Content, who informed the Content Team that all practice leads were going to be reassigned to the Analysis Team and that their titles would change to assistant team leads.

14.      As part of the reorganization, Plaintiff was reassigned to a newly created subgroup on the Analysis Team, "Specialists," and her new role was to oversee all federal, state, local, and

international labor and employment and occupational safety and health reference content and manuals, chart builders, and trackers. This was the first time in BNA/Bloomberg history that ownership of this content had been assigned to a single manager.

15.     The reorganization created a new customer-facing Team Lead position for the Specialists Subgroup, which Plaintiff applied for on or about September 7, 2022.

16.     Although Defendant interviewed Plaintiff for the position on or about September 14, 2022, it was clear that Defendant was not seriously considering Plaintiff's candidacy because neither Ms. Hyland nor Mr. Butler, who conducted Plaintiff's interview, took any notes during the interview and did not ask Plaintiff any questions regarding Plaintiff's customer-facing experience.

17.     Three weeks later, on or about October 5, 2022, Ms. Hyland notified Plaintiff that she was not selected for the new Team Lead position due to "customer-facing reasons" and that the new position was awarded to Dorothy Goldstein, a younger employee with only two years of management experience.

18.     On October 6, 2022, Plaintiff complained to Fatima Abdeldaim, Defendant's Human Resources employee, that she was denied the promotion because of her age. Plaintiff also later requested to be reassigned to another team.

19.     Defendant denied Plaintiff's requests on or about October 13, 2022.

20.     Following Plaintiff's complaint in October 2022, Ms. Goldstein engaged in a sustained campaign of antagonism and gaslighting directed at Plaintiff. As early as November 1, 2022, Ms. Goldstein confronted Plaintiff over an email to Ms. Hyland regarding an idea she had for a climate change hub product, accusing Plaintiff of "trying to undermine her authority" and warning her not to contact Ms. Hyland again.

21.     When Plaintiff attended Defendant's Q2 2023 offsite management meeting, and on or about June 9, 2023, suggested to the meeting organizer, Samira Martinez, and Mr. Butler that improvement was needed to the event to accommodate her hearing and vision impairments, Ms. Goldstein yelled at Plaintiff the following day and told her, "Your time is up," "You're out of touch," and "You don't know anything anymore."

22.     On or about May 30, 2023, Ms. Goldstein chastised Plaintiff for notifying HR on or about May 20, 2023, that one of her team members may need to take FMLA leave.

23.     On or about June 13, 2023, Ms. Bodell replied to an email from Ms. Goldstein and referenced her intention to take successive medical leave for cataract surgeries prior to her anticipated retirement under Defendant's "Rule of 85." At a subsequent one-on-one meeting with Plaintiff, Ms. Goldstein asked Plaintiff directly when she intended to retire. Plaintiff did not provide a date; she stated she was not eligible until September 2024, and Ms. Goldstein responded, "Oh."

24.     On June 27, 2023, Plaintiff complained to Ms. Abdeldaim that Ms. Goldstein was subjecting her to a hostile work environment. Defendant did not take any meaningful action in response to Plaintiff's complaint.

25.     On July 10, 2023, Defendant held Plaintiff's mid-year performance review, attended by Ms. Goldstein and Ms. Hyland, during which Ms. Goldstein told Plaintiff she was being placed on a Performance Improvement Plan ("PIP"), purportedly because Plaintiff had been "too easy" on one of her direct reports who is neurodiverse. During the meeting, Plaintiff complained about the hostility Ms. Goldstein had consistently shown her and asked whether the PIP was a "short path to termination." Neither Ms. Goldstein nor Ms. Hyland responded.

26.     Prior to placing Plaintiff on a PIP, Defendant had not issued any oral or written warnings to Plaintiff or otherwise imposed any disciplinary actions for any reason, including with regard to her performance.

27.     Plaintiff satisfactorily performed her duties throughout her long tenure with Defendant. This includes the period leading up to the PIP, during which Plaintiff planned and completed several successful projects, including an In Focus page on layoffs that became a "Top 10" most-viewed page on the platform, as well as chart builders for local labor and employment content.

28.     Plaintiff also developed and facilitated a three-hour training session on Bloomberg Law for her team. Ms. Goldstein did not attend the session, and despite having access to a recording of it, raised no concerns with Plaintiff regarding the training's content or quality.

29.     The PIP charged Plaintiff with, among other things, reviewing an analysis piece prior to its publication, despite the fact that there were no analysts on her team and Defendant prohibited her from conferring with other managers who did. At no time prior to the PIP had Plaintiff been responsible for reviewing analysis pieces.

30.     On or about September 17, 2023, in a meeting attended by Ms. Goldstein and Ms. Abdeldaim, Defendant terminated Plaintiff, citing the professional development of Plaintiff's team members. During that same meeting, when Plaintiff asked the reason for the decision to terminate her, Ms. Goldstein then cited performance issues with her team.

31.     The performance of Plaintiff's direct reports was not an issue identified in the PIP.

32.     As required by the PIP, Plaintiff worked with each member of her team to update and revise their development plans, copies of which were provided to Ms. Goldstein.

33.     Defendant's reasons for terminating Plaintiff are pretextual.

34. Plaintiff's termination is part of a broader pattern and practice of discriminatory treatment toward workers over the age of 40.

35. Following the 2022 reorganization, Defendant placed numerous older workers on PIPs for purported performance concerns, then ultimately terminated those employees or otherwise forced them to resign.

36. On or about December 15, 2022, during a "dry run" presentation of the Specialist's Team's annual roadmap before Mr. Butler and Lauren Kaplan, Sr. Director of Strategy, Plaintiff stated that the team expected to lose at least one member in 2023 while presenting the staff attrition slide. In response, Mr. Butler stated, "Maybe it's not such a bad thing to have people leave. Gives you a chance to hire someone like Abigail Gampher. Better than having people sitting around at their desks all day waiting to retire." At the time, Ms. Gampher was a recently hired analyst well under the age of 40.

37. Defendant harbors animus toward older workers.

38. Plaintiff has been damaged by Defendant's illegal conduct and she continues to sustain damages.

## COUNT I

### AGE DISCRIMINATION IN VIOATION OF THE ADEA

39. Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

40. Plaintiff is over the age of 40 and is therefore a member of a protected class based on her age.

41. The ADEA prohibits an employer from "discharge[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

42. The above facts state claims against Defendant for age discrimination in violation of the ADEA.

43. Defendant's conduct was willful, intentional, deliberate, malicious, reckless and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

44. As a result of Defendant's conduct, Plaintiff suffered and continues to suffer from harm, injury and monetary damages, including but not limited to past and future income, benefits, career opportunities and costs.

**<u>COUNT II</u>**
**AGE DISCRIMINATION IN VIOLATION OF THE VHRA**

45. Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

46. Plaintiff is over the age of 40 and is therefore a member of a protected class based on her age.

47. The VHRA prohibits discrimination in employment on the basis of age. Va. Code § 2.2-3905.

48. The above facts state claims against Defendant for age discrimination in violation of the VHRA.

49. Defendant's conduct was willful, intentional, deliberate, malicious, reckless and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

50. As a result of Defendants' conduct, Plaintiff suffered and continues to suffer from harm, injury and monetary damages, including but not limited to past and future income, benefits, career opportunities, emotional distress, and costs.

## COUNT III
### RETALIATION IN VIOLATION OF THE ADEA

51.   Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

52.   The ADEA makes it unlawful for an employer to discriminate against any individual because that individual opposed any practice made unlawful by the ADEA. 29 U.S.C. § 623(d).

53.   The above facts state claims against Defendant for retaliation in violation of the ADEA.

54.   Defendant's conduct was willful, intentional, deliberate, malicious, reckless and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

55.   As a result of Defendant's conduct, Plaintiff suffered and continues to suffer from harm, injury and monetary damages, including but not limited to past and future income, benefits, career opportunities and costs.

## COUNT IV
### RETALIATION IN VIOLATION OF THE VHRA

56.   Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

57.   The VHRA makes it unlawful for an employer to discriminate against any individual because that individual opposed any practice made unlawful by the VHRA.

58.   The above facts state claims against Defendant for retaliation in violation of the VHRA. Va. Code § 2.2-3905(B)(7).

59.   Defendant's conduct was willful, intentional, deliberate, malicious, reckless and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

9

60.    As a result of Defendants' conduct, Plaintiff suffered and continues to suffer from harm, injury and monetary damages, including but not limited to past and future income, benefits, career opportunities, emotional distress, and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant as to her Complaint and further award Plaintiff the following:

A. Damages for lost wages, including back pay, front pay and lost benefits;

B. Compensatory damages

C. Liquidated damages;

D. Statutory penalties;

E. Punitive damages;

F. Prejudgment interest in an amount to be determined at trial;

G. Compensation for any tax penalty associated with a recovery;

H. Reasonable attorneys' fees and costs; and

I. Whatever further and additional relief the court shall deem just and equitable.

Respectfully submitted,

*/s/ Tiffany Joseph Goodson*
Tiffany Joseph Goodson, VA Bar No. 81687
HKM Employment Attorneys LLP
3100 Clarendon Blvd., Suite 200
Arlington, VA 22201
Phone: (202) 919-5952
Fax: (202) 919-5952
tjosephgoodson@hkm.com

*Counsel for Plaintiff Heather Bodell*